Gertrude Coleman Glover, on behalf of Stanley Coleman, Alexander Coleman, Robert Coleman and Edith Mae Coleman, the minor children, and Patricia Coomber, the minor stepchild of Hayes Coleman sought, and was awarded compensation by the Industrial Accident Board and the trial court, for the death of Hayes Coleman. Mrs. Glover is Hayes Coleman's divorced wife, since remarried.
Coleman, the deceased, was employed by the Orofino Mercantile Company to assist in the butcher-shop, clean it out, and on Sunday mornings to open the refrigerator so that the contents thereof would not be frozen too hard, and occasionally defrost the refrigerating plant, and to look after and feed the stock kept by the company for butchering purposes at a place some three miles from the store, at which place deceased did the latter work, and also lived there in a shack provided by the company. His duties required him to travel back and forth between the place where the stock was kept and the store, and the company paid for the gas and oil, deceased traveling in his own automobile, and while the shack was furnished as a place for deceased to live, the *Page 342 
evidence, though a little indefinite, shows it was evidently figured as part of his compensation.
On the evening of the 11th of June, 1932, the deceased attended a farewell party for a Mr. Scholes, some little distance from Orofino, and early on the morning of the 12th, which was Sunday, in company with three other men, returned to the so-called shack where he lived. About 4 o'clock, the deceased told his companions that it was necessary for him to feed and water the stock, and went out for that express purpose. In about thirty minutes he returned, and breakfast having been prepared by one of the other men, was eaten, whereupon at about 4:45 deceased stated to his companions that he had some work to attend to at Orofino. He went out and got into the automobile, and while driving along the highway from the shack, and before crossing the bridge into Orofino, the car left the highway and plunged into the river.
It is respondent's contention that the deceased went to sleep in the car, which, thereby uncontrolled, went into the river, and death resulted from drowning. No evidence was introduced as to whether deceased met death by drowning or otherwise, but appellants themselves alleged, in answer to the application for compensation, in their affirmative defense that Hayes Coleman "was drowned," but contend that at the time he was driving along the road and the car went into the river, he was not upon his master's business, and that the accident was caused by wilful negligence in going to sleep, and the drowning, if accidental, did not arise in the course of and out of his employment.
The Industrial Accident Board and the trial court found that it did so arise, and in effect found him not guilty of such wilful intent to injure himself as to prevent the award of compensation under sec. 43-1002, I. C. A.
It is appellants' contention that the evidence of deceased's statements to his companions that he had to go to Orofino to do some work, made prior to his departure for Orofino, and above referred to, were hearsay and inadmissible. No objection was made to the admission of this evidence. *Page 343 
Appellants assert that "at no time did the defendant state that he was coming to Orofino to do the work in the Orofino Mercantile Company. His statement was that he was coming to Orofino to do some business." (Page 5, appellants' brief.)
However, we find from the record that the witness Butterly testified as follows:
"He (deceased) said he had some work to tend to in Orofino.
"He said he had a little work to tend to in Orofino.
"Q. Did he say work or business?
"A. It was work naturally.
"Q. Did he say that in so many words?
"A. Yes.
It was a little early for us to go up town, and he says he had work that he, that called him to go."
Appellants attempt to discredit this evidence as inadmissible, but the record shows no proof by appellants to the contrary. It was deceased's duty to do his work on Sunday morning, and so far as the record shows, the only work he had to do in Orofino on Sunday morning was his work in the butcher-shop for the Orofino Mercantile Company.
Even though it be not considered so intimately connected as to time and sequence and circumstances as to be considered a part of the res gestae, that is, what deceased actually was doing at the time the car plunged into the river, the applicable rules are announced as follows:
"When it is material to show the purpose or reason for the departure of a person, his declarations of his purpose made at or about the time of his departure, are admissible." (22 C. J., sec. 307, p. 286.)
"Declarations may be relevant evidence as to the existence of a particular intent or intention in the mind of the declarant. Such declarations are admissible if, and not unless, the existence of the particular mental state at the time to which the declarations relate, is a relevant fact. . . . . The declarations are not direct evidence of the facts asserted, but merely circumstantial evidence as to the existence of *Page 344 
some relevant and material fact." (22 C. J., sec. 297, pp. 281, 282.)
In 22 C. J., sec. 301, p. 284, we find the following statement:
"An otherwise relevant declaration is not rendered incompetent by reason of the fact that the declarant is dead."
It seems clear that in the case at bar, it was necessary to ascertain the intent and purpose of the deceased before the fatal ride. In no other way can we arrive at a conclusion as to whether deceased intended to go to his work or whether he left for some other purpose. Since his intention is a material factor herein, the evidence complained of was admissible under the rules above noted. (See, also, Sugden v. St. Leonards, (1876) 1 P. D. 154, 251, and Nolte v. Chicago etc. R. Co.,165 Iowa, 721, 147 N.W. 192.)
Two further questions are presented: first, whether the evidence is sufficient to sustain the finding that at the time deceased was driving, he was engaged in his master's business, and second, if going to sleep was such conduct as to prevent recovery.
Appellants contend that to conclude that he was on his master's business would be basing an inference on an inference and a presumption on a presumption. This reasoning is fallacious for the reason that there is only the question of whether the testimony of his companions that he said he was going from the shack to Orofino to work, was credible. If it was, no inference or presumption is involved. The statement is clear and unequivocal that he was going to Orofino to do work. If part of his work was to travel back and forth from the shack to the store, the circumstances bring the case not within that doctrine that an employee may not recover if an injury is received on his way to work, as out of the scope of his employment (State v. Clearwater Timber Co., 47 Idaho 295,274 Pac. 802, 66 A.L.R. 1396; Enterprise Foundry Co. v.Industrial Acc. Com., 206 Cal. 562, 275 P. 432; Hilding v.Department of Labor and Industry, 162 Wn. 168, 298 P. 321; 1 Schneider, Workmen's Compensation Law, sec. 263, p. 745; 1 Honnold, Workmen's *Page 345 
Compensation, sec. 107, p. 358), but would fall within the rule announced in Zeier v. Boise Transfer Co., 43 Idaho 549,254 Pac. 209, that where one's employment requires him to be upon the public highways, and he travels there, it is part of his employment, and an injury received at such place and under such circumstances is compensable. (See, also, Scrivner v. FranklinSchool Dist., 50 Idaho 77, 293 P. 666; Murdoch v. Humes Swanstrom, 51 Idaho 459, 6 P.2d 472.)
Appellants contend that the earliness of the hour shows that the deceased's statements that he was going to Orofino to perform work were not true. The evidence is that ordinarily deceased went to the store about 7 o'clock; that in several instances he had to go earlier, and occasionally as early as 5 o'clock. The accident occurred about 4:50 o'clock A. M. There was also evidence that it took two or three hours to clean out the store on Sunday mornings, and if the refrigerating machine were defrosted, it might take five hours to do that with the other work. Reasonable minds might well differ as to whether or not from these circumstances, all considered together, the deceased had been going to perform his work, but on the other hand there was no evidence whatever that he was going for any other purpose, and any other conclusion would have to be based on mere conjecture and surmise. Thus, the only positive evidence is that he was going for the purpose of performing his duties, and that the course of his employment took him back and forth between the two places where he performed his duties. The mere fact that the deceased had been up for two nights before, with practically no sleep, would not indicate that wilful carelessness on his part made him go to sleep.
There is no question but that it was part of his duties to open the refrigerator Sunday morning, and it was also his duty to feed and water the stock. These duties had to be performed in separate places, and the only way he could perform them was to go from one place to the other.
Under sec. 43-902, I. C. A., as construed in In re Stewart,49 Idaho 557, 290 P. 209, there can be no question of contributory *Page 346 
negligence. Section 43-1002 specifies that the only defenses that can be raised are wilful intention of the workman to injure himself or another, and intoxication. It can hardly be contended that the performance of his duties showed a wilful intention to injure himself, and his negligence will not defeat a claim for compensation if he was engaged in the work he was employed to do, or work incidental thereto. (In re Stewart,supra; Taylor v. Seabrook, 87 N.J.L. 407, 94 Atl. 399; Dixon v.Andrews, 91 N.J.L. 373, 103 Atl. 410.)
The evidence is sufficient to sustain the finding and conclusion that his employment required deceased to travel the road in question, and that at the time the car went into the river he was on his way, in the course of his employment, to perform his duties, and that he was not guilty of a wilful intention to injure himself if the car went into the river because he had fallen asleep.
The judgment is therefore affirmed. Costs to respondent.
Attention is called to the fact that the names of the various witnesses do not appear on the bottom of the pages of the transcript. Transcripts from the Industrial Accident Board should conform to Rule 19. (Larson v. Ind. School District,ante, p. 49, 22 P.2d 299.)
Budge, C.J., and Morgan, Holden and Wernette, JJ., concur. *Page 347