(No. 5284. February 14, 1929.)

STATE ex rel. E. G. GALLET, State Auditor, Appellant, v. CLEARWATER TIMBER COMPANY, a Corporation, Employer, and WORKMEN'S COMPENSATION EXCHANGE, Surety, Respondents.

[274 Pac. 802.]

Frank L. Stephan, Attorney General, and Alfred C. Cordon, Assistant Attorney General, for Appellant.

Ralph S. Nelson for Respondents.

TAYLOR, J.—This proceeding was instituted to collect, under C. S., sec. 6223, $1,000 for the death of one Pierce, an employee of the defendant, who left no dependents. The Industrial Accident Board allowed the claim. On appeal to the district court this was reversed, and the appeal here is on behalf of the state.

The facts are practically undisputed. The premises of the company where deceased was engaged to work lie north and east of the city of Lewiston. Immediately adjoining and paralleling the south line of these premises, is the right of way of the main line of the Northern Pacific Railway. Immediately adjoining this right of way, and parallel to it on the south, is a public highway leading from the city of Lewiston, from which there are two crossings leading directly over the Northern Pacific right of way and track to the premises of the mill company. It was necessary to use one of these and to cross this right of way and railway track to reach the premises. Pierce was driving his own automobile from his home in Lewiston to his work. In driving across one of these crossings, his automobile was struck by a passenger train from the north, and he was killed. This crossing was the first reached by de-

ceased, and was the most direct and practical route to be taken by him in traveling from the highway to the premises of defendant. It had been built and maintained for many years by the city of Lewiston for the purpose, and used by the general public in going to and from a public city camp grounds and fair grounds maintained thereon up to about two months before the accident, since which time the defendant had acquired and occupied the premises in constructing its plant thereon. It was open to the public and used by others as well as by employees of the defendant and employees of a power company operating on premises to the north of those of the defendant, in reaching the premises of each of these companies. The employer had no control over the crossing, or of the means of travel by deceased. Nothing is shown to change the public character of this crossing.

Under admitted facts, the question of whether the injury arose "out of and in the course of" his employment is one of law. (*Walker v. Hyde,* 43 Ida. 625, 253 Pac. 1104.)

Appellant cites in its support the decision of the Utah court in *Cudahy Packing Co. v. Industrial Commission,* 60 Utah, 161, 28 A. L. R. 1394, 207 Pac. 148, affirmed in *Cudahy Packing Co. v. Parramore,* 263 U. S. 418, 30 A. L. R. 532, 44 Sup. Ct. 153, 68 L. ed. 366; 23 N. C. C. A. 744, commonly called the Parramore case. This was rendered under a statute giving compensation for injury "by accident arising out of, or in the course of his employment, wheresoever such injury has occurred." Of the fact that this act constituted an amendment of the term in the former law of Utah, theretofore in the conjunctive, and must have been intended to enlarge the scope of the law, the Utah court says:

"Our Workmen's Compensation Act differs from a majority of the states, in that our statute uses the disjunctive, 'or,' while in most of the compensation laws the conjunctive, 'and,' is found. The compensation law as originally enacted in 1917 provided compensation for injuries arising out of and in the course of the employment. The act was amended in 1919 to read as above quoted. It is apparent,

therefore, that the Legislature by the amendment intended to include within the statute accidents not covered by the original act.''

That decision, however, declared that under the facts of the case it made no difference whether the approach under consideration was a public highway or a private way, or the statute in the conjunctive or disjunctive, and that a liability existed ''by reason of the fact that the plant or manufacturing establishment is so located that there is no other method or means of approach except over railroad tracks or other dangerous places, and that the same are in such close proximity to the plant that the employee has no election or option in determining or selecting his way of approach''; ''founded upon the inferable fact that the danger incident to crossing this railroad track, by reason of its location and proximity to the packing plant, must be held to have been within the contemplation of the parties at the date of the employment;'' and that under such circumstances the injury arose both out of and in the course of the employment.

In the later case of *Bountiful Brick Co. v. Industrial Commission,* 68 Utah, 600, 251 Pac. 555, affirmed in *Bountiful Brick Co. v. Giles,* 276 U. S. 154, 48 Sup. Ct. 221, 72 L. ed. 286, the Utah court held that where an employee crossed a railway track upon a private way with the knowledge of the employer, under circumstances held to amount to ''an invitation'' by the employer to use this private way, ''his employment contemplated and included in itself the manner of so going to and from his work.'' Speaking of the Parramore case, the court said:

''The proximity of the railroad track to the employer's premises and the necessity of crossing the track daily, in going to and from work, were in the main reasons for the conclusion in that case that the employment involved peculiar and abnormal exposure to a common peril which was annexed as a risk incident to the employment.''

In concluding that the latter case was ''within the principle decided in the Parramore case, and should be ruled accordingly,'' the court said as applicable to both:

"The employee, in crossing the track at any time, was exposed to a peril which is common to all, but by virtue of his employment he was required to cross the track regularly and continuously, thus being peculiarly and abnormally exposed to a common peril. It is the greater degree of exposure to the peril which arises as an incident to the employment which sustains the causal relation between the employment and the accident."

The supreme court of the United States, in affirming the Parramore decision, in addition to the grounds fairly inferable as controlling the Utah court, that the employee— "could not, at the point of the accident, select his way. He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected," seemed to deem it essential, in order to bring the case with such a combination of facts within the principles applicable to a private way of approach and support an affirmance, to say that—

"The railroad over which the way extended was not only immediately adjacent to the plant, but, by means of switches, was connected with it, and in principle it was as though upon the actual premises of the employer," a fact which the Utah court had said was "not controlling or of much significance," and "alone cannot determine the right of claimants to compensation," in order to conclude that—

"In view of the facts and circumstances peculiar to this case it was fairly open to the state Supreme Court to conclude that the necessary causal relation between the employment and the accident sufficiently appeared to save it from the constitutional objection . . . . "

The supreme court of the United States, in affirming the later Utah decision in the Giles case, *supra*, states as a general rule: "Employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done," but that "in some cases the

rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer." The affirmance must be confined to the facts therein, that the crossing or pathway there used was over *private* lands and was not a *public* way.

The cases there cited in support of the exception, some of which are now cited by appellant, when examined show their lack of support for appellant. Except the Parramore case, they were all those of injury upon private ways over private premises, and not one of them holding a public way to be in effect part of the premises of an employer, or extending the rule of interpretation to include hazards of a public way as within the contract of employment, and furnish no support for the contention of appellant. They were not upon their facts cases of departure from the general rule as to ways over the premises of the employer or over private property of another expressly or impliedly furnished by the employer or used with his invitation, knowledge, or acquiescence, but were as follows:

The decision in *Procaccino v. E. Horton & Sons*, 95 Conn. 408, 111 Atl. 594, cited also by the Utah court in the Parramore decision as supporting its position, while discussing the employment of the decedent as contemplating "that he would approach and leave the plant by passing to and from the highway over private property," and that "the use of this method of approach to the plant by this employee was an incidental term of his contract of employment annexed to it by the consent of his employers," followed the English cases and is distinctly placed upon the ground stated, that the employee "was using a way of approach over private property from a highway to the defendant's plant, which way of approach the defendants in their employment of the decedent contemplated that he should use, and that the decedent in such use of the way was, *after he left the highway,* in the course of his employment, and that the injury arose out of a danger incident to his employment." (Italics ours.)

In *Merlino v. Connecticut Quarries Co.*, 93 Conn. 57, 104 Atl. 396, the employee was killed upon premises of the em-

ployer, and over which it had rule-making control, within the danger zone of a blast, where under the facts he was found to be by consent of the employer and as an incidental term of his contract of employment.

In *Corvi v. Stiles & Reynolds Brick Co.*, 103 Conn. 449, 130 Atl. 674, the employee was injured upon the private property of another upon a path known by the employer to be habitually used by its employees, the use of which path benefited the employer.

In *Starr Piano Co. v. Industrial Accident Commission*, 181 Cal. 433, 184 Pac. 860, the employee was injured in a private elevator in effect furnished by the employer and used as a necessary means of access to the place of employment.

In *Sundine's Case*, 218 Mass. 1, 105 N. E. 433, L. R. A. 1916A, 318, 5 N. C. C. A. 616, the employee was using a private stairway constituting the only means of access to her place of employment, in effect furnished by the employer, although leading over private premises of another. This case, in the later decision of *Fumiciello's Case*, 219 Mass. 488, 107 N. E. 349, has been distinctly distinguished from that involving an injury upon a public way in no way controlled by an employer.

Although the West Virginia court in *De Constantin v. Public Service Commission*, 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916A, 329, used the language quoted by the Utah court in its support in the Parramore case as to a possible accident on a public highway, it was not there deciding such a case, but one distinctly held not within the rule purported to be stated.

Appellant cites in addition three decisions which were as follows:

In *Judson Mfg. Co. v. Industrial Accident Commission*, 181 Cal. 300, 184 Pac. 1, the pathway used by the employee was "the means of access required and authorized by the company. This path was not a public highway. The crossing was, in fact, dominant as to user in the employer, servient to its purposes, and intimately associated with its

plant as a part of its necessary establishment. The company had, indeed, even claimed a lawful easement over the crossing for the purposes of the plant."

In *Fox v. Rees & Kirby, Ltd.* (1916), 86 L. J. K. B. 43, W. C. & I. Rep. 339, 115 L. T. 358, 9 B. W. C. C. 459, the employee was injured upon private lands, in fact upon the right of way of a railway constructed upon lands of the employer by a subcontracting firm for conveyance of materials from the factory of the employer, and used by the employees as a regular and recognized way, with the full knowledge of, if not actually "arranged for" by, the employer.

In *Moore v. Cincinnati, N. O. & T. P. Ry. Co.,* 148 Tenn. 561, 256 S. W. 876, the employee was injured on the premises of the employer where he was employed, by a train of the employer's cars, when he was using a customary crossing.

The affirmances of the Utah decisions by the supreme court of the United States were simply declarations that such interpretation of state laws as given them by the state court was binding upon the supreme court of the United States, and that so construed the Utah act did not violate any constitutional right of the defendant; that the legislature had a right to provide as the Utah court held it had provided.

In holding that "the greater degree of exposure to the peril which arises as an incident to the employment" gives rise to the "inferable fact" "that the danger incident" "must be held to have been within the contemplation of the parties at the date of the employment," "which sustains the causal relation between the employment and the accident," and holding an injury to an employee thus situated arises both out of and in the course of his employment, thus making the disjunctive or conjunctive use of the terms immaterial, the Utah court has pushed the doctrine "farther than it had been previously extended." (*Brown v. Department of Labor and Industries,* 135 Wash. 327, 237 Pac. 733.)

■ The rule of the English cases, due to their clarity and the fact that they constituted original sources of interpretation at the adoption of our law, are entitled to great weight. (*McNicol's Case*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, 4 N. C. C. A. 522.)

Those decisions which have affixed a liability for injuries occurring off of the employer's premises but upon lands which have been considered essentially a part of the premises, as a private approach thereto, have done so upon the facts of each case, on the theory that the employee was using a necessary or reasonable way of access over *private lands* which was considered as having either been provided for, or the use thereof acquiesced in, or impliedly required by the employer as necessary. But the English cases have fixed such liability upon the ground that but for his employment, the employee would not have been at the place where he was injured, and that he was there by reason of the employment and not as a member of the public, and that the public was not entitled to be there; or, in other words, that he was not entitled to be there as a member of the public.

The distinction is plainly made in *Longhurst v. John Stewart & Son, Ltd.* (1916), 2 K. B. 803, 32 T. L. R. 722, W. C. & I. Rep. 292, 9 B. W. C. C. 605 (affirmed (1917) A. C. 249). It is there said by Lord Cozens-Hardy:

"I think two propositions are established by the authorities: (a) The employment of a workman does not begin until he has left a public road, and it does not end until he has reached a public road. While on the road, he is exercising his right as a member of the public, and not any right arising out of his contract of employment. (b) When the workman is on the employers' land, he would be a trespasser, but for the contract of employment, and he is within the protection of the Act, although the accident may happen when he is not actually at work, but is only going to or returning from his work."

This same thought is stressed in the opinions of Pickford and Warrington, L. JJ., and the rule set forth in proposition (a) is made especially plain by the discussion of cases

and distinctions drawn as to other cases cited supporting it. (See *Cook v. Owners of SS. Montreal* (1913), W. C. & I. Rep. 206, 29 T. L. R. 233, 108 L. T. 164; 6 B. W. C. C. 220; *Webber v. Wansborough Paper Co.* (1915), A. C. 51; 84 L. J. K. B. 127 (1915), W. C. & I. Rep. 313; *Gane v. Norton Hill Colliery Co.* (1909), 2 K. B. 539, 78 L. J. K. B. 921, 2 B. W. C. C. 42.)

The English and the majority of American courts have refused to "infer" that dangers incident to public crossings are "within the contemplation of the contract of employment," even though the employee has occasion to be more frequently present thereon, but hold that such incidental danger is common to the public, and the fact that the employee has to pass that way more frequently is not sufficient to characterize such dangers as peculiarly "abnormal," or injuries arising therefrom as either arising out of or in the course of the employment, or in contemplation of the employment, or a part of the contract of employment. (*Chapman v. Owners of SS. John W. Pearn*, 32 T. L. R. 368; 9 B. W. C. C. 224, 12 N. C. C. A. 368; *Hadwin v. Shepherd*, 9 B. W. C. C. 60; *N. K. Fairbank Co. v. Industrial Commission*, 285 Ill. 11, 120 N. E. 457; *Paulauskis' Case*, 126 Me. 33, 135 Atl. 824; *Fumiciello's Case, supra; Reed v. Bliss & Van Auken Lumber Co.*, 225 Mich. 164, 196 N. W. 420; *Harris v. Henry Cheney Hammer Corp.*, 221 App. Div. 199, 223 N. Y. Supp. 738.)

Our Workmen's Compensation Act is not an insurance act (*N. K. Fairbank Co. v. Industrial Commission, supra*), nor has the legislature undertaken to provide compensation for those injured upon a public highway under these circumstances (*Brown v. Department of Labor and Industries, supra*). The injury here did not "arise out of and in the course of" the employment of deceased.

The judgment is affirmed. Costs to respondents.

Budge, C. J., Wm. E. Lee, J., and Hartson, D. J., concur.

Givens, J., dissents.